IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN ALAN BRASWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 11-G-1213-S |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Steven Alan Braswell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether he has a severe impairment;

    (3)    whether his impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

>   In the instant case, ALJ Joseph F. Dent determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 19]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM PAIN OR OTHER SUBJECTIVE SYMPTOMS**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). This same standard applies to testimony about other subjective symptoms. Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies he suffers from pain or other subjective symptoms at level that would prevent

4

work and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's testimony about pain or other subjective symptoms, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's testimony, or if his reasons are not supported by substantial evidence, the testimony of the plaintiff about his subjective symptoms must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as

6

true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

**DISCUSSION**

The plaintiff, who was 48 years old at the time of the ALJ's decision, alleges disability from July 1, 2007. The ALJ found that the plaintiff has the following severe impairments: colitis; degenerative disc disease of the lumbar spine; diabetes Type I; status post rotator cuff tear; and depression. [R. 17]. He found that the plaintiff has the residual functional capacity to perform light work.[1] In doing so, the ALJ relied on the opinions of a consulting psychological evaluator, Jon G. Rogers, Ph.D., the state agency medical consultant, Gloria Roque, Ph.D., and the state agency disability specialist, Gloria Bradshaw-Whittemore.

On June 19, 2008, Dr. Rogers performed a comprehensive psychological evaluation and mental status examination.[2] The plaintiff complained of depressed mood, both insomnia and sleeping too much, easy fatigueability, suicidal ideas, difficulty

---

[1] The ALJ found that the plaintiff "requires the additional limitations of a position with simple, routine, and repetitive 1-3 step tasks; work in a low stress environment as defined by only occasional decision making and only occasional changes in the work setting; and only occasional interaction with the public and with coworkers." [R. 21].

[2] In his decision, the ALJ refers to "Whittemore" as having performed this evaluation. [R. 23]. The record is clear that Dr. Rogers, a clinical psychologist, examined the plaintiff. [R. 371-77].

concentrating and making decisions and feelings of worthlessness, guilt and hopelessness. [R. 371]. He also reported anxiety symptoms of panic, irritability, pounding fast heart rate and chest pain. Id. He claimed to have problems with anger on a daily basis. Id. Dr. Rogers made the following conclusions about the plaintiff's daily activities:

> Mr. Braswell is able to function independently. The quality of his daily activities is below average. The medical evidence or record provided by DDS (Anxiety Disorder and depression) was reviewed and those findings were considered in the overall assessment of the patient. He presented on this testing occasion stating that he cannot work "because I've got arthritis in my chest and lifting makes it hurt. The irritable bowel syndrome is a problem. I have back pain and numbness in my right leg." He reported depression and anxiety are factors in his employability. Problems include difficulty concentrating and not being able to be around people. An ongoing mental health program, coordinated with a Work Adjustment program, would improve this claimant's prognosis. Medication side effects impair functioning.

[R. 374]. Dr. Rogers diagnosed Depressive Disorder, NOS, Anxiety Disorder, NOS, bowel disturbances, feelings of tension, high blood pressure, diabetes, diarrhea, arthritis and daily pain in his chest. [R. 374-75]. The plaintiff's Global Assessment of Functioning was rated at 51.[3] [R. 375]. Dr. Rogers opined that the extent of the plaintiff's mental impairment is moderate, and that his "ability to understand, remember, and carry

---

[3] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting would be moderately impaired." [R. 376-77].

On June 25, 2008, the state agency psychological medical consultant, Dr. Roque, completed a Psychiatric Review Technique Form after reviewing the evidence of record. She assessed a moderate degree of limitation in social functioning and in maintaining concentration, persistence and pace. [R. 388]. The ALJ summarized Dr. Roque's findings:

> Dr. Roque concluded that the claimant had a depressive disorder not otherwise specified (NOS) and anxiety disorder NOS. Dr. Roque noted that claimant has a history of depression and marital discord. He also had a history of alcohol abuse, but Dr. Roque found that it is not material, as claimant had significantly reduced his alcohol use. Dr. Roque found that the claimant's statements of confusion and poor concentration were not supported by the consultant examiner's findings. Dr. Roque opined that claimant had a mild limitation in activities of daily living, moderate limitation in maintaining social functioning, maintaining concentration, persistence, or pace; with no episodes of decompensation, each of extended duration (Exhibit 7F).

[R. 24]. The state agency psychiatric medical consultant made a mental residual functional capacity assessment that: (a) the plaintiff could understand and remember simple instructions but not detailed ones; (b) the plaintiff could carry out simple instructions and sustain attention to routine/familiar tasks for extended periods, that he would function best around a few supportive coworkers; that he could tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes and multiple demands, and that he could benefit from regular rest breaks and a slowed pace; (c) the plaintiff should have only casual contact with the public; and (d) the

plaintiff could adapt to infrequent, well-explained changes. [R. 394]. The ALJ found that this mental RFC to be "relatively consistent with the medical evidence of record and claimant's testimony," but found the plaintiff to have only a mild limitation in social functioning and maintaining concentration, persistence or pace. [R. 24].

As for the plaintiff's physical impairments, June 16, 2008, physical examination showed a positive straight leg raise[4] on the right, with numbness and tingling along the s! Nerve distribution. [R. 445]. A June 20, 2008, MRI of the lumbar spine showed minimal posterior broad-based disc bulging at L4-5, and at L5-S1 there were degenerative changes with marked facet arthropathy on the right, a posterior broad-based disc bulge and mild to moderate right neural foraminal stenosis. [R. 451]. The plaintiff received epidural injections, because doctors thought that surgery would not help. [R. 403-405]. The plaintiff continued to complain of low back pain, and right leg pain and numbness, and a second MRI performed August 26, 2009, confirmed degenerative changes and prominent epidural fat with mild central canal and foraminal stenosis at L4-5 and mild right foraminal stenosis at L5-S1. [R. 453].

William H. Halama, M.D., a gastroenterologist, diagnosed irritable bowel syndrome based on abdominal pain, which he opined was related to increased stress. [R.

---

[4] A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5) The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

215]. Dr. Halama noted that the plaintiff stated his diarrhea is controlled only with codeine twice daily, but the doctor prescribed only one a day, adding imipramine and cautioning the plaintiff on the sedating effects of these medications and restricting him from driving when taking these. [R. 199].

At the hearing, the plaintiff testified that his colitis "keeps me in the bathroom a lot of the day." [R. 45]. He testified that if he sits or stands for more than 20 minutes, he has severe pain in his back. [R. 47]. He testified because of the pain, he lies down for several hours during the day. [R. 48]. The plaintiff also testified that his depression, he is afraid to leave his house, and when he has to run errands, he waits until he absolutely has to and spends no time socializing when he is out. [R. 45-46].

In applying the Eleventh Circuit's pain standard, the ALJ found that the plaintiff is:

> credible to the extent he would experience shoulder and back pain with heavy lifting. The residual functional capacity was accordingly reduced to accommodate for the lifting limitations. Claimant testified that his depression is better, and the undersigned also reduced the claimant's residual functional capacity to only occasional interaction with coworkers and the public to accommodate for the problems he experiences with stressful situations. It appears from the documentary evidence that when claimant is experiencing problems with his diabetes, he is not eating the proper foods. Claimant testified about the limitations he has due to his medical conditions, however, medical records do not reflect these limitations are to the degree that claimant is incapable of sustaining full-time employment at some level. The testimony claimant gave regarding the time he stopped working, does not reflect his inability to work, but rather the need for a less strenuous and stressful job.

[R. 23]. The ALJ also found that the plaintiff's "daily activities are inconsistent with his allegations of severe limitations that cause him to be disabled." Id.

The medical record contains objective medical evidence of a condition which could be reasonably expected to give rise to the plaintiff's pain, in the form of multiple MRIs, as well as treatment notes revealing multiple SLRs. The medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). Additionally, the continued prescriptions by treating physicians for narcotic medicines to treat colitis, and epidural steroid injections to treat back and leg pain, lends strong support to the plaintiff's allegations of intense or persistent pain. As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

Additionally, the activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true.  The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain.  The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

13

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

At the hearing, the vocational expert testified that a person who is unable to leave his home long enough to perform a 40-hour work week would not be able to meet the demands of competitive employment. [R. 64-65]. She also testified that absenteeism of more than one to two days per month would not be considered adequate work attendance. [R. 65]. Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action

with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 29 February 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.